UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| TILCON, INC. and P.J. KEATING COMPANY, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil No. 22-12046-LTS |
| THE TOWN OF ACUSHNET, et al., | ) ) | |
| Defendants. | ) ) | |

ORDER ON DEFENDANTS' MOTION
TO DISMISS PLAINTIFFS' AMENDED COMPLAINT (DOC. NO. 21)

June 15, 2023

SOROKIN, J.

Plaintiffs Tilcon, Inc. ("Tilcon") and P.J. Keating Company ("PJK") bring this lawsuit

against Defendants the Town of Acushnet ("the Town"), the Board of Selectmen of the Town of

Acushnet, the Soil Conservation Board of the Town of Acushnet, and three individual defendants

sued in their official capacities for an alleged regulatory taking in violation of the United States

Constitution and Article X of the Massachusetts Declaration of Rights to the Massachusetts

Constitution. Doc. No. 20.[1] Defendants now move the Court to dismiss Plaintiffs' First Amended

Complaint, arguing that Plaintiffs' claims are not ripe (i.e., that Plaintiffs sued too soon, before

Defendants rendered a final decision on Plaintiffs' permit application). Doc. No. 21.

---

[1] Citations to "Doc. No. __ at __" reference items appearing on the court's electronic docketing system, and pincites are to the page numbers in the ECF header.

I.      <u>BACKGROUND</u>[2]

Tilcon owns 381.3 acres of property ("the Property") located in the "Industrial" zoning district of the Town, and PJK has the right to, <u>inter alia</u>, extract materials from the quarry that is located on the Property (the "Quarry"), sell the materials that it extracts from the Quarry, operate the Quarry, operate the Hot Mix Asphalt ("HMA") plant that is located on the Property, and sell asphalt that is produced at the HMA plant. Doc. No. 20 ¶¶ 3–4, 18, 21; Doc. No. 22 at 3. In 1989, the Town adopted the Soil Conservation Bylaw (Article VI of the Town's General Bylaws). <u>Id.</u> ¶ 27; Doc. No. 20-1; Doc. No. 22 at 3. The 1989 Bylaw established a Soil Conservation Board in the Town, required that any party seeking to remove earth from land within the Town file an application for an earth removal permit with the Soil Conservation Board, charged the Soil Conservation Board with considering applications for earth removal permits, designated the Board of Selectmen as the authority authorized to issue the permits, and required that no earth be removed from land within the Town except for in accordance with an issued written permit. Doc. No. 20 ¶¶ 27, 61–62; Doc. No. 20-1 at 2–3; Doc. No. 22 at 4.

In May 2021, the Town enacted an amendment to the 1989 Bylaw ("the 2021 Amended Bylaw"), and the Massachusetts Attorney General's Office approved the 2021 Amended Bylaw in August 2021. Doc. No. 20 ¶¶ 54–56; Doc. No. 20-2; Doc. No. 22 at 4. The 2021 Amended Bylaw imposes additional requirements and limitations for the issuance of an earth removal permit, some of which Plaintiffs assert the Quarry operations at the Property cannot satisfy. Doc. No. 20 ¶ 68. For example, Plaintiffs assert that the Quarry's bedrock walls cannot satisfy the 2-

---

[2] The facts described in this section are drawn from the Amended Complaint, Doc. No. 20, and supporting documents attached to the Amended Complaint. The Court also cites in some places to the passage of Defendants' Memorandum in support of this Motion in which they list facts that they "accept[] . . . as true for purposes of this motion." Doc. No. 22 at 3.

to-1 vertical slope requirement in section 3(B)(8)(k) of the 2021 Amended Bylaw, id. ¶ 69; see also Doc. No. 20-2 at 6, and that the Quarry cannot satisfy the slope, grade, and reseed requirement contained in section 10. Doc. No. 20 ¶ 70; see also Doc. No. 20-2 at 11. Under the 2021 Amended Bylaw, the Board of Selectmen act as the Soil Conservation Board. Doc. No. 20-2 at 2.

Plaintiffs allege that the amendment to the Bylaw in 2021 was "specifically aimed at stopping the legal, longstanding operations on the Property," and that in enacting the amendment, "Defendants knowingly instituted standards and criteria that Plaintiffs and/or the Property could not satisfy." Doc. No. 20 ¶¶ 13, 69, 84. Plaintiffs suggest the amendment followed a multi-year history of actions by Defendants and/or their agents intended to limit or end Plaintiffs' operations on the Property. See, e.g., id. ¶¶ 30–31, 41–42, 46–53. They cite numerous statements made at public meetings by Defendants, their authorized agents, and other Town officials suggesting that Plaintiffs and/or the Property were the reason for enacting the 2021 Amended Bylaw. See id. ¶¶ 55, 81–82. Following the enactment of the 2021 Amended Bylaw, Plaintiffs allege that a member of the Soil Conservation Board at the time told a PJK employee that she would not have a job for much longer, which Plaintiffs suggest confirms that the Board's actions were intended to put the operations at the Property out of business. Id. ¶ 74.

Plaintiffs filed an application for an earth removal permit on November 7, 2022, Doc. No. 20 ¶ 86; Doc. No. 20-11 at 3, and then filed the case before this Court on December 2, 2022. Doc. No. 1. Defendants filed their first Motion to Dismiss on January 20, 2023, Doc. No. 18, and Plaintiffs responded by filing an Amended Complaint on February 3, 2023, Doc. No. 20, as was their right at the time under the Federal Rules. See Fed. R. Civ. P. 15(a). Defendants then filed a separate Motion to Dismiss Plaintiffs' Amended Complaint on February 17, 2023, seeking to

dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the ground that because Defendants have not rendered a decision on Plaintiffs' November 2022 earth removal permit application, Plaintiffs' claims are not ripe. Doc. No. 21.[3] Plaintiffs opposed, arguing that their claims are ripe because the 2021 Amended Bylaw itself constitutes Defendants' final decision on how they will permit Plaintiffs to use the property. Doc. No. 23 at 11. Plaintiffs also assert, as a separate basis for ripeness, that proceeding with their 2022 application would be futile because the Property cannot satisfy requirements in the 2021 Amended Bylaw and those requirements cannot be waived. Id. at 11–12.

Also in their March 3, 2023 opposition, Plaintiffs reported that their permit application was scheduled to be the subject of a public hearing on March 7, 2023. Id. at 9 n.2. Counsel for the parties subsequently reported at the June 8, 2023 hearing on this Motion that the permit application review process remains ongoing. In the meantime, Defendants have shut down the Quarry and HMA plant operations on the Property. Doc. No. 20 ¶ 103.

## II.  LEGAL STANDARD

In assessing a motion to dismiss under Rule 12(b)(1) or 12(b)(6), a court must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor. Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010); In re Montreal, Maine & Atl. Ry., Ltd., 888 F.3d 1, 6 (1st Cir. 2018). The central question in a ripeness inquiry is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of" the judicial relief sought. Lab. Rels. Div. of Constr. Indus. of Mass., Inc. v. Healey, 844 F.3d

---

[3] The present Order discusses and resolves Defendants' second Motion to Dismiss that applies to the Amended Complaint. Doc. No. 21. Defendants' first Motion to Dismiss that applies to the Original Complaint, Doc. No. 18, is DENIED AS MOOT.

318, 326 (1st Cir. 2016) (internal quotation marks omitted) (quoting MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007)). "The plaintiffs bear the burden of alleging facts sufficient to demonstrate ripeness." Reddy v. Foster, 845 F.3d 493, 501 (1st Cir. 2017) (citing Lab. Rels. Div., 844 F.3d at 326).

When a plaintiff alleges an unconstitutional regulatory taking, "a federal court should not consider the claim before the government has reached a 'final' decision." Pakdel v. City & Cnty. of San Francisco, 141 S. Ct. 2226, 2228 (2021) (citing Suitum v. Tahoe Reg'l Plan. Agency, 520 U.S. 725, 737 (1997)). As the Supreme Court recently explained, "[t]he finality requirement is relatively modest. All a plaintiff must show is that 'there [is] no question . . . about how the regulations at issue apply to the particular land in question.'" Id. at 2230 (quoting Suitum, 520 U.S. at 739). "[A] plaintiff's failure to properly pursue administrative procedures may render a claim unripe if avenues still remain for the government to clarify or change its decision." Id. at 2231 (emphasis in original).

The First Circuit recognizes a "futility exception" to the final decision requirement for takings claims which, where it applies, may allow a party to "bypass a permit process and go directly to court seeking judicial review of a law's constitutionality under the Takings Clause." Gilbert v. City of Cambridge, 932 F.2d 51, 61 (1st Cir. 1991); see also Haney as Tr. of Gooseberry Island Tr. v. Town of Mashpee, No. 22-1446, 2023 WL 3834051, at *6 (1st Cir. June 6, 2023) (explaining that the Supreme Court's recent decision in Pakdel v. City and County of San Francisco essentially endorsed the futility exception and made it "part and parcel of the finality requirement"); Pakdel, 141 S. Ct. at 2230 ("All a plaintiff must show is that 'there [is] no question . . . about how the regulations at issue apply to the particular land in question.'" (alterations in original) (quoting Suitum, 520 U.S. at 739)). The burden of establishing futility

5

lies with the party seeking to bypass the permit procedure, and "the mere possibility, or even the probability, that the responsible agency may deny the permit should not be enough to trigger the excuse." Gilbert, 932 F.2d at 61. Rather, "[t]o come within the exception, a sort of inevitability is required: the prospect of refusal must be certain (or nearly so)." Id. (citations omitted); see also Haney, 2023 WL 3834051, at *6 ("If the prospect of an adverse decision is certain (or nearly so) 'federal ripeness rules do not require the submission of further and futile applications.'" (quoting Palazzolo v. Rhode Island, 533 U.S. 606, 626 (2001))). Additionally, "the filing of one meaningful application will ordinarily be a necessary, although not alone sufficient, precondition for invoking the futility exception." Gilbert, 932 F.2d at 61.

III.   DISCUSSION

The Court holds that the futility exception applies and Plaintiffs' claims are ripe for court review. Plaintiffs have "fil[ed] . . . one meaningful application" for administrative relief—their permit application filed in November 2022. See Gilbert, 932 F.2d at 61; Doc. No. 20 ¶ 86; Doc. No. 20-11 at 3. They have also alleged sufficient facts to show that "the prospect of refusal" of that application is "certain (or nearly so)." Gilbert, 932 F.2d at 61. Plaintiffs allege that they and/or the Property cannot satisfy multiple standards and criteria for a permit required by the 2021 Amended Bylaw, Doc. No. 20 ¶¶ 13, 68–70, and Defendants, in their filings on this Motion, do not dispute those allegations with any specific argument that Plaintiffs/the Property might potentially satisfy all of the permit criteria. See Doc. Nos. 21, 22. In addition, the plain text of the 2021 Amended Bylaw and Plaintiffs' allegations demonstrate that there is no provision in the Amended Bylaw authorizing the Soil Conservation Board or the Board of Selectmen to waive any of the Amended Bylaw's requirements. Doc. No. 20 ¶¶ 14, 100; Doc. No. 20-2. Consistent with that notion, an authorized agent of Defendants stated in an email to

P.J. Keating representatives that "the town never waives a bylaw, the Soil Board enforces the bylaw." Doc. No. 20 ¶¶ 14, 101; Doc. No. 20-10 at 2.[4] The Soil Conservation Board and the Board of Selectmen also lack the authority to, on their own, amend the Amended Bylaw, as the process for the 2021 amendment included approval by the Town and then approval by the Massachusetts Attorney General's Office. Doc. No. 20-6 at 2; Doc. No. 20 ¶ 27; Doc. No. 22 at 4.

Defendants assert that the permit process is not futile because, "[a]s with Plaintiffs' permit applications under the 1989 Bylaw, it may be that once Defendants have a meeting and review Plaintiffs' application for an earth removal permit, that the permit is allowed with conditions." Doc. No. 22 at 7. However, they make no reasoned argument for how Defendants could possibly allow the permit given the requirements that Plaintiffs allege they cannot meet. Defendants point to no authority under which the Soil Conservation Board or the Board of Selectmen could potentially amend or waive any of the conditions of the Amended Bylaw that Plaintiffs allege they cannot meet but that are required for issuance of a permit. Id.

Plaintiffs have alleged sufficient facts to show that proceeding with their earth removal permit application would be futile and their claims are ripe for review. Accordingly, the Motion to Dismiss the Amended Complaint, Doc. No. 21, is DENIED.

SO ORDERED.

  /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge

---

[4] Though one of the members of the Board of Selectmen at the time and Defendants' counsel were copied on the email, Plaintiffs allege that none of Defendants ever expressed any disagreement with any of the statements in the email. Doc. No. 20 ¶ 101.